Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff
Joshua Borkman

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JOSHUA BORKMAN, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California Consumers Legal Remedies Act<br>(2)  Violations of Unfair Competition Law<br>(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(4)  Breach of Implied Warranty under the Magnuson-Moss Warranty Act<br>(5)  Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiff Joshua Borkman ("Plaintiff") brings this action for himself and on behalf of all Class Members, *i.e.*, all current and former owners or lessees who purchased or leased in the United States any 2009 through 2014 MINI vehicles (collectively, "Class Vehicles").  The class vehicles were designed, manufactured, distributed, and sold by Defendant, BMW of North America, LLC ("BMW" or "Defendant").

2.      The class vehicles' engines are defective because their seals are made of a material that is prone to cracking.  When the seals crack, fluids intended to lubricate the engine leak out of the system.  This causes overheating and engine damage.

3.      The Class Vehicles' engine lubrication system is comprised of the oil filter housing unit, gaskets, valve covers, oil filter, oil pumps, oil feed lines, oil pan, valves, and seals ("Engine Lubrication System").  The Class Vehicles suffer from design or manufacturing defect(s) that cause the engine lubrication system's components, including the oil filter housing unit, oil pump, and vacuum pump assemblies, to abnormally wear at the seals and leak engine oil ("Engine Oil Sealing Defect").

4.      On information and belief, the Class Vehicles' engine lubrication system's components are defective because the seals are made of a material prone to cracking, deforming, or deteriorating due to its close proximity to engine heat sources and abnormal interference with other engine parts.  This, in turn, may lead to such unsafe conditions as engine oil leakages, sudden loss of power during operation, engine overheating, and potential engine failure.  Plaintiff alleges that BMW knew, or should have known, about the defective nature of the Class Vehicles since 2011, but failed to disclose the defect to Class Members and actively concealed it.

5.      In 2001, BMW, through its MINI brand, unveiled the newly re-

designed Mini Cooper vehicles to U.S. markets after a nearly 40-year hiatus.[1] Since its re-emergence into the U.S. markets, BMW has capitalized on the Mini Cooper's traditional and unique features: subcompact size, fuel-efficient technology, and "go-kart-like" driveability.[2]  BMW has touted the MINI brand as representing "a strong emotional and personal connection between the driver, the vehicle and the brand."  However, that "connection" depended on BMW's ability to convince consumers that the "smallest car on sale in America[3]" would also keep them safe.  As such, BMW utilized the Mini Cooper's small size and quick maneuverability to address the attendant safety concerns, stating that "[w]hen it comes to automotive safety, it's important to remember that the single best way to stay safe is to avoid accidents altogether.  And this is [sic] where MINIs, with their incredibly nimble, agile handling, truly shine."[4]

6.     However, since 2011, BMW has received numerous complaints from owners regarding its vehicles' engine lubrication system.  The Engine Oil Sealing Defect causes unsafe conditions, including engine oil leakages, sudden loss of power during operation, engine overheating, and potential engine failure.  These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle during operation and can cause engine malfunctions

---

[1] MINI USA, *50 Years of Motoring,* http://www.miniusa.com/content/miniusa/en/why-mini/why-mini/over-50-years-of-motoring.html (last visited March 31, 2016).

[2] BMW Group, *2009 Mini Hardtop Press Kit,* https://www.press.bmwgroup.com/usa/article/detail/T0018082EN_US/2009-mini-press-kit:-the-2009-mini-hardtops-still-a-class-of-one (last visited March 31, 2016).

[3] Automotive News, *BMW dares to be different with Mini ads,* http://www.autonews.com/article/20030804/REG/308040701/marketing:-bmw-dares-to-be-different-with-mini-ads (last visited March 31, 2016).

[4] MINI USA, http://www.miniusa.com/content/miniusa/en/crm/safety-is-still-concern.html (last visited March 31, 2016).

CLASS ACTION COMPLAINT

at any time and under any driving conditions or speeds, thereby increasing the risk of accidents and injury.  As an example, these conditions may cause the vehicle to suddenly lose oil pressure during operation and require immediate shut-off or cause the engine to overheat.[5]

7. On information and belief, the Engine Oil Sealing Defect requires repairs to several components within the system, including the oil filter housing unit, oil filter gaskets, oil filter cover, oil pump, oil feed lines, oil pan, valves, and seals.

8. As a result of this defect, consumers will be required to pay hundreds, if not thousands, of dollars to repair or replace the oil filter housing unit, oil filter gaskets, oil filter cover, oil pumps, oil feed lines, oil pan, valves, and seals.

9. On information and belief, the Class Vehicles have the same or substantially identical engine lubrication systems, and the Engine Oil Sealing Defect is the same for all Class Vehicles.

10. Beginning as early as 2011, through technical service bulletins,

---

[5] *See*, for example, this 2014 Mini Cooper owner's complaint to the National Highway Traffic Safety Administration ("NHTSA"): (2014 Mini Cooper 1/13/15) THIS SECOND TIME, WHICH WAS ON JANUARY 5TH, 2015, MY CAR STARTED TO WARN ME THAT THE "ENGINE OIL PRESSURE WAS TOO LOW" AND TO STOP MY ENGINE IMMEDIATELY. AFTER A FEW MINUTES OF PARKING MY CAR, I NOTICED THAT THERE WAS A PUDDLE OF OIL GATHERING UNDER THE UPPER PORTION OF MY VEHICLE. ONCE I WAS ABLE TO HAVE MY CAR INSPECTED BY THE DEALER'S SERVICE SPECIALIST, I WAS NOTIFIED THAT THERE WAS ANOTHER RECALL ON A PART. THIS TIME IT WAS THE OIL FILTER HOUSING THAT CRACKED BECAUSE IT WAS "TOO WEAK". THE SPLASH SHIELD AND OIL DEFLECTOR ALSO NEEDED TO BE REPLACED. IN BOTH INCIDENTS I WAS PLACED IN LIFE THREATENING SITUATIONS AND CAN NO LONGER FEEL CONFIDENT THAT MY MINI COOPER IS SAFE TO DRIVE. *TR (Safercar.gov, *Search for Safety Issues* (March 17, 2016), http://www-odi.nhtsa.dot.gov/ owners /SearchSafetyIssues).

consumer complaints, and dealership repair orders, among other internal sources, Defendant knew or should have known that the Class Vehicles and the engine lubrication system contained one or more design and/or manufacturing defects that causes safety hazards.  Nevertheless, Defendant has actively concealed and failed to disclose this defect to Plaintiff and Class Members prior to the time of purchase or lease and thereafter.

11.     As a result of the Engine Oil Sealing Defect, BMW issued multiple Technical Service Bulletins ("TSBs") to its dealers in the United States, acknowledging defects in the engine lubrication system and attempting to address the issue.  For example, on or about June 1, 2012, BMW issued TSB 11-03-12, covering 2005-2013 Mini Cooper vehicles, informing its dealers that the "engine oil pan gasket replacement should no longer be used due to [sic] sealing flange becoming deformed."  However, on information and belief, consumers continued to experience problems with their vehicles, including oil leaks and engine malfunction warnings.  Additionally, on or about January 1, 2014, BMW issued TSB 11-01-12, covering 2005-2013 Mini Cooper vehicles, informing its dealers that "an oil leakage may occur, due to the compromised oil pump volume control solenoid valve."

12.     On  April 14, 2014, BMW issued TSB 11-01-14, covering 2014 Mini Cooper and Mini Cooper S vehicles, informing dealers that "the oil filter housing assembly must be replaced."  The TSB further stated that "there is a possibility that coolant leak may occur in [sic] the oil filter housing" and "this can cause overheating, loss of power, and an illuminated engine warning light."  However, on information and belief, consumers continued to experience problems with their vehicles, including oil leaks and engine malfunction warnings.

13.     On April 1, 2015, BMW issued TSB 11-03-15, covering 2011-2015 Mini Cooper vehicles, informing its dealers that "some vehicles are consuming

1   engine oil and run [sic] poorly."   Additionally, the vehicles are leaking oil "from
2   cylinder head cover gasket area" in the engine and also indicating an "engine
3   malfunction."  However, on information and belief, consumers continued to
4   experience problems with their vehicles, including oil leaks and engine
5   malfunction warnings.

6        14.   On June 1, 2015, BMW issued TSB 11-05-15, covering 2014 Mini
7   Cooper vehicles, informing its dealer that vehicles "will experience a loss of
8   power, warning light for engine on, overheating, due to a coolant leakage
9   occurring in oil filter housing."  Around the same time, BMW issued a second
10  TSB 11-05-15, covering the same vehicles, informing its dealers that the "oil
11  filter housing may leak coolant which will cause overheating, activating the
12  engine warning light, and loss of power."

13       15.   On information and belief, despite knowledge from numerous
14  consumer complaints, dealership repair orders, and technical service bulletins,
15  BMW has not issued a warranty extension for the Class Vehicles, has not
16  recalled the Class Vehicles to adequately repair the defects, has not offered its
17  customers a suitable repair or replacement free of charge, and has not offered to
18  reimburse the Class Vehicles' owners and leaseholders in full for the costs they
19  incurred in diagnosing and repairing the Engine Oil Sealing Defect.

20       16.   If Plaintiff and Class Members had known about these defects at the
21  time of sale or lease, Plaintiff and Class Members would not have purchased or
22  leased the Class Vehicles or would have paid less for them.

23       17.   Because BMW will not notify Class Members that the engine
24  lubrication system is defective, Plaintiff and Class Members (as well as members
25  of the general public) are subjected to potentially dangerous driving conditions
26  that can occur without warning.

27       18.   The alleged Engine Oil Sealing Defect was inherent in each MINI
28  vehicle and was present in each Class Vehicles' engine lubrication system at the

1    time of sale.

2         19.    BMW knew about and concealed the Engine Oil Sealing Defect

3    present in every Class Vehicle, along with the attendant dangerous safety

4    problems, from Plaintiff and Class Members, prior to the time of sale, lease,

5    repair, and thereafter.  In fact, instead of repairing the defects in the engine

6    lubrication system, BMW performed repairs that simply masked the defects.

7         20.    Plaintiff is informed and believes and based thereon alleges that

8    even where BMW agrees to address consumer complaints of faulty engine

9    lubrication system components, BMW merely replaces the defective components

10   with the same or similar defective components.  Ultimately, this leaves

11   consumers with defective vehicles that are substantially certain to again

12   experience the Engine Oil Sealing Defect and costly repairs, as well as the

13   associated safety hazards.

14        21.    If Plaintiff and Class Members had known about these defects at the

15   time of sale or lease, Plaintiff and Class Members would not have purchased or

16   leased the Class Vehicles or would have paid less for them.

17        22.    As a result of their reliance on Defendant's omissions and/or

18   misrepresentations, owners and lessees of the Class Vehicles suffered an

19   ascertainable loss of money, property, and value of their Class Vehicles,

20   including out-of-pocket costs related to repairs to the Engine Oil Sealing Defect.

21   Additionally, as a result of the Engine Oil Sealing Defect, Plaintiff and Class

22   Members were harmed and suffered actual damages in that the Class Vehicles'

23   engine lubrication system components are substantially certain to fail or require

24   replacement or repair, before their expected useful life has run.

25                                  **PARTIES**

26   **PLAINTIFF JOSHUA BORKMAN**

27        23.    Plaintiff JOSHUA BORKMAN is a California citizen who resides

28   in Sherman Oaks, California.

24.     On or around October 1, 2013, Plaintiff purchased a new 2013 Mini Cooper Paceman vehicle from Crevier BMW, an authorized MINI dealer in Santa Ana, California.

25.     Plaintiff purchased his vehicle primarily for personal, family, or household use.  BMW manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

26.     Passenger safety and reliability were factors in Plaintiff's decision to purchase his vehicle.  Prior to purchasing his vehicle, Plaintiff spent time researching the Mini Cooper Paceman on MINI's corporate website and various authorized MINI dealers' websites.  Based on his research, Plaintiff believed that the Mini Cooper Paceman would be a safe and reliable vehicle.  Plaintiff also test drove his vehicle with a dealership salespersonHad BMW disclosed its knowledge of the Engine Oil Sealing Defect before Plaintiff purchased his vehicle, Plaintiff would have seen such disclosures and been aware of them.  Indeed, BMW's omissions were material to Plaintiff.  Like all members of the Class, Plaintiff would not have purchased his Class Vehicle, or would have paid less for the vehicle, had he known of the Engine Oil Sealing Defect.

27.     On or about June 20, 2015, with approximately 40,443 miles on the odometer, Plaintiff noticed symptoms of the Engine Oil Sealing Defect, including fluid leakage from his MINI vehicle.  Plaintiff brought his vehicle to Bob Smith BMW, an authorized MINI dealer in Calabasas, California, complaining of the fluid leaking from the vehicle's engine.  A MINI service technician inspected Plaintiff's vehicle and verified Plaintiff's concerns.  The service technician discovered coolant leaking from the vehicle's oil filter housing gasket and replaced the oil filter housing gasket at that time.

28.     Despite providing BMW and its authorized dealers with an opportunity to repair his vehicle, Plaintiff continues to experience the Engine Oil Sealing Defect, including  check engine alerts and loss of power.

29.     At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**DEFENDANT**

30.     Defendant BMW of North America, LLC is a limited liability company organized and in existence under the laws of the State of Delaware and registered to do business in the State of California.  On information and belief, at all relevant times herein, BMW of North America, LLC, was engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in California and throughout the United States of America.

31.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in California.

**JURISDICTION**

32.     This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) and based on 28 U.S.C. §§ 1441 and 1453.

33.     Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(a), 1391(a) and (c), 1441(a), and 1446(a).  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiff would ordinarily expect to try them in one judicial proceeding.

34.     In addition, a substantial part of the events or omissions giving rise to these claims and a substantial part of the property that is the subject of this action are in this district.  Plaintiff's Declaration, as required under Cal. Civ. Code section 1780(d) but not pursuant to *Erie* and federal procedural rules, reflect that a substantial part of the events or omissions giving rise to the claims

1    alleged herein occurred, or a substantial part of property that is the subject of this

2    action, is situated in Los Angeles County, which lies in the Central District of

3    California.  Plaintiff's Declaration regarding venue are attached as **Exhibit 1**.

4                           **FACTUAL ALLEGATIONS**

5           35.    In 2001, BMW, through its MINI brand, unveiled the newly re-

6    designed Mini Cooper vehicles to U.S. markets after a nearly 40-year hiatus.

7    Since its re-emergence into the U.S. markets, BMW has capitalized on the Mini

8    Cooper's traditional and unique features: subcompact size, fuel-efficient

9    technology, and "go-kart-like" driveability.  BMW has touted the MINI brand as

10   representing "a strong emotional and personal connection between the driver, the

11   vehicle and the brand."  However, that "connection" depended on BMW's ability

12   to convince consumers that the "smallest car on sale in America" would also

13   keep them safe.  As such, BMW utilized the Mini Cooper's small size and quick

14   maneuverability to address the attendant safety concerns, stating that "[w]hen it

15   comes to automotive safety, it's important to remember that the single best way

16   to stay safe is to avoid accidents altogether.  And this is [sic] where MINIs, with

17   their incredibly nimble, agile handling, truly shine."

18          36.    However, since 2011, MINI has received numerous complaints from

19   owners regarding its vehicles' engine lubrication system. The Engine Oil Sealing

20   Defect causes unsafe conditions, including,  engine oil leakages, sudden loss of

21   power during operation, engine overheating, and potential engine failure.  These

22   conditions present a safety hazard because they severely affect the driver's

23   ability to control the vehicle during operation and can cause engine malfunctions

24   at any time and under any driving conditions or speeds, thereby increasing the

25   risk of accidents and injury.  As an example, these conditions may cause the

26   vehicle to suddenly lose oil pressure during operation and require immediate

27   shut-off.

28          37.    Beginning as early as 2011, through technical service bulletins,

consumer complaints, and dealership repair orders, among other internal sources, Defendant knew or should have known that the Class Vehicles and the engine lubrication system contained one or more design and/or manufacturing defects that cause safety hazards. Nevertheless, Defendant has actively concealed and failed to disclose this defect to Plaintiff and Class Members prior to the time of purchase or lease and thereafter.

38.     On information and belief, the Class Vehicles have the same or substantially identical engine lubrication systems, and the Engine Oil Sealing Defect is the same for all Class Vehicles.

39.     On information and belief, the Class Vehicles' engine lubrication system's components including the oil filter housing unit, oil pump, and vacuum pump assemblies, are defective because the seals are comprised of a material prone to cracking, deforming, or deteriorating due to its close proximity to engine heat sources and abnormal interference with other engine parts.

40.     As a result of this defect, consumers will be required to pay hundreds, if not thousands, of dollars to repair or replace the oil filter housing unit, oil filter gaskets, oil filter cover, oil pump, oil feed lines, oil pan, valves, seals, and other related components.

41.     Dating back to at least 2011, BMW was aware of the defects in the engine lubrication system. BMW, however, failed and refused to disclose these known defects to consumers. As a result of this failure, Plaintiff and Class Members have been damaged.

**The Engine Oil Sealing Defect Poses an Unreasonable Safety Hazard**

42.     The Engine Oil Sealing Defect causes unsafe conditions, includingengine oil leakages, sudden loss of power during operation, engine overheating, and potential engine failure. These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle during operation and can cause engine malfunctions at any time and under any

1  driving conditions or speeds, thereby increasing the risk of accidents and injury.

2  As an example, these conditions may cause the vehicle to suddenly lose oil

3  pressure during operation and require immediate shut-off or cause the engine to

4  overheat.

5       43.    Complaints that MINI owners and lessees filed with the National

6  Highway Traffic Safety Administration ("NHTSA") demonstrate that the Engine

7  Oil Sealing Defect is widespread and dangerous, and that it manifests without

8  warning.  These complaints reflect the propensity of components within the

9  engine lubrication system to crack, deform, or deteriorate due to the components'

10 material, close proximity to engine heat sources, and their abnormal interference

11 with other engine parts.  Additionally, these complaints reflect the repeated,

12 unexpected repair costs and BMW's refusal to take responsibility for the defect.

13 The complaints also indicate Defendant's awareness of the problems with the

14 engine lubrication system and how potentially dangerous the defective condition

15 is for consumers.  The following are some safety related complaints describing

16 the Engine Oil Sealing Defect (spelling and grammar mistakes remain as found

17 in the original) (Safercar.gov, *Search for Safety Issues* (March 17, 2016),

18 http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues).

19 2009 Mini Cooper

20       (a)    5/8/2014 NOTICED DECREASED ACCELERATION
               PERFORMANCE AND VISIBLY NOTICED LEAKING OIL
21             FROM THE TOP OF THE TURBO SYSTEM NEXT TO THE
               HEAT SHIELD AFTER RETURNING HOME AFTER A DRIVE
22             ON THE FREEWAY. MINI DEALER IDENTIFIED THE
               PROBLEM AS A TURBO OIL FEED LINE LEAK. NOTICED ON
23             NHTSA FORUMS THAT THIS IS A COMMON ISSUE WITH
               MINI OWNERS AND COULD BECOME A FIRE HAZARD
24             UNDER THE HOOD IF NOT DETECTED AND QUICKLY
               REPAIRED. *TR
25       (b)    2/3/2015 LEAK IN TURBO OIL LINE DUE TO CRACKS IN
               PLASTIC O-RING. AFTER HUNDREDS OF HEAT CYCLES,
26             THE O-RING COOKS ITS SELF AND STARTS TO LEAK OIL
               ONTO THE TURBO. IT SEEMS TO ME THAT THE PRODUCT
27             RECALL AND INSTALLATION OF THE OIL LINE HEAT
               SHIELD BY NTSB SHOULD HAVE ALSO INCLUDED
28             RECALL AND REPLACEMENT OF THE TURBO OIL LINE.

(c)   THE OIL LINE HEAT SHIELD HAS NOT SOLVED THE PROBLEM OF THE BAKED O-RING IN THE TURBO OIL LINE AND THEREFORE THE TURBO OIL LINE SHOULD BE COVERED UNDER MANUFACTURER RECALL/DEFECT! 4/26/2015 I TOOK MY MINI COOPER TO PASSPORT MINI IN MONTGOMERY COUNTY MARYLAND FOR THE HPFP FAILING WHERE THEY CHANGED IT AND THEN TOLD ME THAT THE TURBO OIL FEED LINE IS LEAKING AND THAT THE TIMING CHAIN HAD STRETCHED AND WAS GOING TO FAIL. AFTER I TOLD THEM THAT I KNOW THAT THEY HAVE HAD PROBLEMS AND COMPLAINED SOME THEY SAID THAT THEY WOULD COVER 30% OF THE CHAIN REPLACEMENT AND A COMPLETE DETAIL OF MY CAR AND THAT THEY WERE BEING "GENEROUS". I EXPLAINED TO THEM THAT I WANTED MY DEFECTIVE CHAIN FIXED NOT A CAR WASH. AFTER READING THIS WEBSITE I AM HOPING TO GET THE OIL FEED LINE REPLACED TOO. IT TO IS VERY WELL DOCUMENTED. IF IT GOES UP IN FLAMES WHILE MY WIFE AND DAUGHTER ARE IN THE CAR WHICH ONE OF THE EXECUTIVES AT MINI OR BMW WILL WRITE ME TO APOLOGIZE FOR THIS? THIS TOTALLY UNEXCEPTABLE BEHAVIOR FOR A COMPANY. LAWYERS WONT HELP MINI WONT HELP BMW WONT HELP. NO ONE WANTS TO DO THE RIGHT THING FOR THE CONSUMER ANYMORE! ALL OF US DESERVE TO BE TREATED FAIRLY. THIS IS WHY WE HAVE GOVERNMENT, FOR TIMES LIKE THIS WHEN THE BIG COMPANIES RUN US OVER AND LAUGH AT US!

2009 Mini Cooper Clubman

(d)   12/17/2012 HAD CAR IN DEALER SHOP FOR REPAIR OF FAULTY TIMING CHAIN TENSIONER/GUIDE (SEE SEPARATE COMPLAINT). WAS TOLD ALSO HAD A LEAK IN TURBOCHARGE OIL INLET LINE THAT WILL COST OVER $1,000 OUT OF POCKET TO REPAIR. THIS IS CLEARLY A COMMONLY REPORTED ISSUE AND A FIRE SAFETY HAZARD THAT SHOULD BE DEALT WITH IN A RECALL. *TR

2009 Mini Cooper S

(e)   1/2/2013 TURBO OIL LINES LEAKING OIL. NO CHECK ENGINE LIGHT HAS BEING ACTIVATED. *TR

(f)   1/2/2013 VEHICLE WAS TAKEN TO DEALERSHIP IN FEB 2012 FOR A RATTLING NOISE. SERVICE CENTER AT BRAMAN MIAMI SAID THAT THEY COULD NOT DUPLICATE THE NOISE, SO IT WAS ASSUMED THEY FOUND NOTHING WRONG WITH THE VEHICLE. PRIOR TO THIS, THE VEHICLE HAD BEEN IN THE SHOP 2-3 TIMES DUE ENGINE MALFUNCTION LIGHT, ROUGH IDLE AT COLD START AND LOSS OF TURBO POWER DUE TO LEAKAGE IN TURBO OIL FEED LINES. THIS WAS REPAIRED IN EARLY 2012/LATE 2011. IN DECEMBER OF 2012, WHILE DRIVING THE RATTLING NOISE OF THE COMPLAINT IN FEB 2012 INTENSIFIED AND OIL LIGHT

ILLUMINATED WHILE DRIVING. CAR WAS PULLED OVER TO SAFE LOCATION. ONCE CAR WAS STOPPED, THE ENGINE MALFUNCTION LIGHT ALSO ILLUMINATED. DRIVER CHECKED OIL LEVEL, WHICH APPEARED LOW BUT WITHIN THE MARKS ON THE DIPSTICK. OIL SPLATTER WAS OBSERVED ON THE HOOD AND ON ENGINE. RUBBER GASKET FEEDING TO ENGINE WAS OBSERVED TO BE DISPLACED WHERE OIL APPEARED TO HAVE LEAKED OUT. VEHICLE WAS TOWED TO BRAMAN MIAMI. SERVICE DEPARTMENT REPORTED THAT FAILURE WAS CAUSED BY TIMING CHAIN/TENSIONER ISSUE. SERVICE DEPT IS CHARGING 17K USD FOR REPAIRS AS IT IS NOT FOUND TO BE UNDER THE SCOPE OF WARRANTY OF PREVIOUS REPAIRS TO THE TURBO OIL FEED LINES. MINI HAS BEEN CONTACTED TO SEE IF ANY RELIEF CAN BE PROVIDED AS THIS SEEMS TO BE A COMMON ISSUE WITH THESE VEHICLES. *TR

(g) 4/14/2013 TURBO OIL FEEDLINE / PIPE FAILURE, RESULTING IN LEAK, POSSIBLY DUE TO EXCESSIVE HEAT. *TR

(h) 8/2/2013 THIRD COMPLAINT AND COUNTING..... I WENT TO START MY MINI, ONLY TO NOTICE IT WAS LEAKING OIL HEAVILY UNDER MY CAR. I BROUGHT IT TO MY REPAIR SHOP WHO TOLD ME IT MIGHT BE THE O RING. THEY REPLACED IT AND TOLD ME TO BRING IT BACK A WEEK LATER. I RETURNED FRIDAY JULY 19TH TO HAVE THEM LOOK UNDER THE HOOD. THERE WAS OIL EVERYWHERE. ALL OVER THE ENGINE. THE SEAL WAS FINE! IT TURNS OUT THE VACUUM PUMP NEEDS TO BE REPLACED AND POSSIBLY THE TIMING CHAIN AT A LATER DATE. THE COST FOR THE PUMP AND LABOR IS $574.00. SO FAR I HAVE SPENT ALMOST $4000.00 ON REPAIRS. I DON'T HAVE AN ESTIMATE FOR THE TIMING CHAIN, I CAN ONLY IMAGINE. I ONLY BOUGHT MY MINI IN FEBRUARY AT 49K MILES AND SHE'S BEEN IN THE SHOP LONGER THAN SHE'S BEEN DRIVEN. I DON'T KNOW WHAT TO DO ANY MORE AND WISH THAT BMW/MINI WOULD ACKNOWLEDGE THAT ALL R56 ENGINES ARE DEFECTIVE. IF I KNOWN I WOULD HAVE BOUGHT ANOTHER BETTER RELIABLE CAR THAN A MINI AND THAT IS COMING FROM A PERSON WHO LOVES MY MINI. *TR

(i) 11/9/2013 MINI COOPER SENT A RECALL FOR A FAULTY TIMING CHAIN IN MY 2009 MINI COOPER. THIS IS THE 2ND TIMING CHAIN REPAIR IN 2 YEARS. WHEN I HAD IT IN FOR THE REPAIR I INFORMED THE TECH I SMELLED OIL BURNING AFTER THE VEHCLE WAS RUNNING DURING A HIGHWAY DRIVE. THEY LOOKED AT THE CAR AND INFORMED ME THE TURBO LINES WERE LEAKING WHICH POSE A RISK IF I LEFT IT UNREPAIRED. THE TURBO LINE REPAIR IS A $1000 REPAIR ON A CAR WITH LESS THAN 35000 MILES. THE TECH INFORMED ME THAT THEY WERE GOING TO PUT A HEAT SHIELD ON THE VEHILCE ALSO AS PART OF A RECALL. PERHAPS THIS SHIELD SHOULD HAVE BEEN INSALLED PRIOR AND THE LINE WOULD STILL BE INTACT.

(j) 11/26/2013 THE TURBO OIL FEED LINE WAS LEAKING TOO

AND I WOULD HAVE TO PAY FOR THAT. IT COST ME
$900.00. I ASKED IF THE CAR HAD A HEAT ON IT AND HE
SAID NO BUT THAT I DON'T REALLY NEED ONE. I
THOUGHT THERE HAD BEEN A SERVICE BULLETIN PUT
OUT SPECIFICALLY BECAUSE OF THE HEAT FROM THE
TURBO CAUSING THIS ISSUE BUT HE SAID IT HAD
NOTHING TO DO WITH IT. *TR

(k)     12/10/2013 FIRE DID NOT OCCUR, BUT THERE IS A RISK.
MANY MINI COOPER MODELS WITH TURBOCHARGERS
ARE EXPERIENCING A LEAKY OIL FEED LINE TO THE
TURBO AFTER APPROXIMATELY 25,000 MILES. DUE TO A
POORLY INSULATED RUBBER GASKET. IT IS A
MANUFACTURING FLAW, BUT MINI HAS FAILED TO
ACKNOWLEDGE THE ISSUE. THIS IS A FIRE RISK. THE OIL
IS ALLOWED TO LEAK INTO THE ENGINE BAY, AND IT
CAN DESTROY THE ENGINE BECAUSE MINI COOPERS DO
NOT HAVE AN OIL SENSOR.

(l)     1/22/2014 TURBO OIL FEED LINE LEAK, OIL FILTER
HOUSING GASKET WHICH IS COSTING ME CLOSE TO
1200$. *TR

(m)    4/23/2015 PERSISTENT OIL LEAKS FROM AND AROUND OIL
FILTER HOUSING AND TURBO OIL LINES. OIL LEAKS
DIRECTLY ON EXHAUST MANIFOLD DOWN PIPE,
POTENTIALLY STARTING A FIRE, HASN'T YET, BUT THERE
HAS BEEN PLENTY OF SMOKE AND IN ONE INSTANCE, A
SMALL FLARE-UP WHEN OIL DRIPPED ON THE PIPE AS
THE CAR WAS IDLING IN THE GARAGE AFTER A SHORT
TRIP.

(n)     4/26/2015 LEAKING TURBO OIL FEED LINE AND FAILING
TIMING CHAIN.

(o)     5/15/2015 UPON TH EENGINE HEATING AND COOLING THE
PLASTIC GASKET ON TH EENGINE OIL COOLER CAN GET
PINCHED, CAUSING AN OIL LEAK. MINI COOPERS IN
PRIOR YEARS - 2002-2007 HAD THE SAME ISSUE AND MINI
HAD A RECALL. IF I SPEND THE $1,800 TO GET THE REPAIR
THE NEXT TIME THE ENGINE HEATS UP AND COOLS - THE
GASKET COULD BECOME PINCHED AGAIN - THUS
CAUSING A LEAK. MINI COOPER OF ATLANTA IS YES THIS
COULD HAPPEN AND I WOULD HAVE TO GET IT
REPAIRED AGAIN. MINI COOPER NEEDS TO ENSURE THE 2
PLATES OF THE METAL OIL COOLER ARE SECURE AND
CANNOT EXPAND AND SHRINK - UPON ENGINE USAGE.
THIS IS THE SAME MANUFACTURING FLAW MINI COOPER
HAD IN 2002 - 2007 - SO WHY HASN'T MINI COOPER BEEN
TOLD TO FIX THEIR PROBLEM - VERSES THROWING THE
RESPONSIBILITY TO THE CUSTOMER?

(p)     10/23/2015 TL* THE CONTACT OWNS A 2009 MINI COOPER
S. THE CONTACT STATED THAT WHILE DRIVING AT
APPROXIMATELY 40 MPH, THE VEHICLE FAILED TO
ACCELERATE WHEN THE ACCELERATOR PEDAL WAS
DEPRESSED AND BEGAN TO JERK. IN ADDITION, A LOUD
KNOCKING SOUND WAS HEARD FROM THE HOOD OF THE
VEHICLE WHEN DRIVEN AND OILS LEAKS WERE
DISCOVERED WHEN PARKED. THE FAILURE OCCURRED
CONSTANTLY. THE VEHICLE WAS NOT DIAGNOSED OR
REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF

THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 44,000.

2009 Mini Cooper S Clubman

(q) 3/3/2014 TURBO OIL FEED LINE LEAKING ONTO ENGINE/MANIFOLD. POSSIBLY COULD HAVE CAUSED A FIRE. *TR

(r) 10/1/2014 TURBO OIL LINE LEAK, DEALER WANTS $3300 TO REPAIR. *TR

(s) 11/16/14 SMOKE BEGAN COMING FROM HOOD VENTS, INSPECTED AND FOUND OIL LEAKING ONTO EXHAUST MANIFOLD AND THE TURBO HEAT SHIELD FROM THE OIL TUBE FEEDING THE TURBO WHERE IT WAS CRIMPED TOGETHER. I WAS CLOSE TO HOME AND CONTINUED, WHEN THE ENGINE COOLED I FOUND THAT I COULD REMOVE THE OIL LINE FROM THE FITTING JUST BY TOUCHING IT. I AM SURPRISED THIS THING DIDN'T GO UP IN FLAMES! WHEN I TOOK IT TO THE MINI DEALER THEY REFUSED TO REPAIR THE OIL TUBING LEAK UNLESS I ALSO COMMITTED TO A NEW HEAD COVER AT 2K. MINI DENIES ANY ISSUES WITH THE DESIGN OR FITTINGS. *TR

(t) 2/24/2015 TOOK IN FOR OIL CHANGE, BURNING SMELL, AND RATTLING SOUND WHEN ENGINE COLD. I WAS GIVEN A LIST AFTER THEY HAD A FEW DAYS OF: MATERIAL FAILURE OF OIL PAN GASKET, OIL FILTER HOUSING LEAK, TURBO OIL FEED LINE LEAK, MATERIAL FAILURE OF THERMOSTAT HOUSING, MATERIAL FAILURE OF WATER PUMP, AND MATERIAL FAILURE OF TIMING CHAIN, TIMING CHAIN GUIDES, TENSIONER. I ENDED WITH A TOTAL REPAIR COST OF $4,666.30. TWO WEEKS LATER I AGAIN HAVE A BURNING SMELL AND THE TRIM COVERING THE TURBO CHARGER CRACKS. I AM TOLD THIS IS NORMAL AND IT IS JUST OUT OF THE 5 YEAR WARRANTY ON THIS EVEN THOUGH I HAVE AN EXTENDED COSMETIC WARRANTY. IN DECEMBER THE CHECK ENGINE LIGHT COMES ON BUT GOES OFF AFTER I CALL DEALER. I AM TOLD IF IT IS OFF, MAY JUST BE EMMISIONS ERROR. ON 2/20/2015, MY OIL PRESSURE LIGHT GOES ON, DEALER HAS NO OPENINGS UNTIL 2/23/15. I TAKE IN AND NOW IT HAS MORE ISSUES, STEMS AND VALVES, WHICH WILL BE ANOTHER $2K IN REPAIRS. IT IS STILL NOT DUE FOR OIL CHANGE BUT I HAD REQUESTED ONE SINCE I WAS THERE. IT IS LOW ON OIL DUE TO VALVE AND THE ENGINE ISSUE. ALL OF THESE ISSUES ARE IDENTICAL TO A THOSE VEHICLES WITH THE TENSIONER,WATER PUMP, TURBO FEED LINE RECALL.....BUT YET I AM TOLD MINE DOES NOT HAVE THE RECALL ON IT.

2009 Mini Cooper S Convertible

(u) 1/12/2015 3RD REPAIR- 2/17/2014 MINI NORTH SCOTTSDALE PRESSURE CONVERTER VALVE FOR TURBO TURBO HEAT SHIELD BATTERY VALVE COVER GASKET TOTAL: $637.86 4TH REPAIR- 5/19/2014 MINI NORTH SCOTTSDALE TIMING

CHAIN- IT WAS BROKEN INTO PIECES, UNABLE TO DRIVE DAR TOTAL: $1,480.99 5TH REPAIR- 1/6/2015 MINI NORTH SCOTTSDALE ENGINE LIGHT DISPLAYED VALVE COVER REPLACED VACUUM PUMP LEAKING TURBO OIL LINE LEAKING TOTAL: $2,145.19 TOTAL IN REPAIRS TO DATE: $5,938.63. *TR

2010 Mini Cooper

(v)     12/8/2013 ENGINE SEEMED TO BE LACKING POWER INTERMITTENTLY DRIVING TO WORK. FELT SOMETHING WAS WRONG, BUT NO INDICATOR LIGHTS DISPLAYED SO I CONTINUED DRIVING. NOTICED HEATER BEGAN BLOWING COLD AIR, YELLOW WARNING LIGHT CAME ON INDICATING ENGINE WAS BEGINNING TO OVERHEAT. WITHIN 10 SECONDS, RED WARNING LIGHT REPLACED THE FIRST LIGHT (ENGINE OVERHEATING!). CONTINUED ON UNTIL I COULD SAFELY STOP. CALLED WRECKER TO TAKE TO REPAIR SHOP. FOUND COOLANT & OIL HAD EXPLODED FROM ENGINE WITH VISIBLE CRACK IN THE PLASTIC HOUSING. THANKFULLY, CAR WAS STILL UNDER WARRANTY. MINI DEALERSHIP HONORED THE WARRANTY. STATED THE VACUUM PUMP HAD FAILED CAUSING CATASTROPHIC FAILURE OF THE ENTIRE ENGINE. ENGINE IS BEING REPLACED. *TR

2010 Mini Cooper S

(w)     12/10/2013 WE WERE DRIVING THE CAR AT 20 MPH AND THE CHECK ENGINE LIGHT CAME ON. WE PULLED OVER TO THE SIDE OF THE ROAD AND DID NOT NOTE ANY PROBLEMS. WE THEN DROVE DIRECTLY TO THE MINI DEALERSHIP NEARBY AND THEY SAID THE HEAD GASKET SEAL WAS BROKEN A LEAKING OIL. ALSO THEY SAID THE TIMING CHAIN AND BELT TENSIONER NEEDED TO BE REPLACED AS THEY WERE LOOSE. NO REPAIRS WERE EVER PERFORMED ON THESE PARTS. IT WAS NOTED THAT THERE WAS BUILD UP IN THE OIL LINES TO THE TURBO CAUSING IT TO SEIZE UP AND NEEDED TO BE REPLACED. TOTAL COSTS WERE $3,000 FOR PARTS AND LABOR. *TR

(x)     10/19/2015 PURCHASED CAR APRIL 2014 W 46,000 MILES. WARRANTY HISTORY SHOWED VALVE GASKET REPLACED. AT 64000 MILES DEALER SAYS IT NEEDS TO BE REPLACED AGAIN. NOT TOLD AT PURCHASE - AT MINI DLR - THAT CAR CONSUMES A QUART OF OIL EVERY 700 MILES WHICH I WAS JUST TOLD BY LOCAL SERVICING DEALER THAT THEY CONSIDER THAT NORMAL. LEAK AT GASKET CONTRIBUTES TO AIR INFILTRATION AND POOR OIL CONSUMPTION I WAS TOLD. I WOULD NOT HAVE PURCHASED THE CAR KNOWING THIS. IT ADDS CONSIDERABLY TO THE OPERATING COSTS. AFTER TELLING SERVICING DLR THIS WEEKEND THAT I KNEW THE CAR HAD ALREADY HAD VALVE COVER GASKET REPLACED, HE SAID HE WOULD COVER 75% OF OVER $800 COST. HE OBVIOUSLY KNEW THAT IT DIDN'T OR

SHOULDN'T NEED THAT WORK SO SOON AFTER BEING DONE. THE MINI DEALERS ARE THIEVES AND WITHHOLD VITAL INFORMATION. THE STRUT MOUNT APPARENTLY IS ALSO "DOMED" WHICH SPEAKS TO STRUCTURAL INTEGRITY OF THIS CAR. I WOULD NEVER RECOMMEND A MINI TO ANYONE AND FEEL THEIR PRACTICES ARE COMPLETELY UNETHICAL AND THE BUILD QUALITY IS SUBSTANDARD TO WHAT IS CONSIDERED NORMAL. WHO NEEDS TO HAVE THE VALVE COVER GASKETS REPLACED TWICE IN UNDER 65,000 MILES? WHO HAS TO GO AND BUY OIL EVERY MONTH AND A HALF? THE LAST CAR I OWNED THAT NEEDED THAT WAS A 20 YEAR OLD 1975 PONTIAC WITH OVER 100K. MILES. GARBAGE.

2010 Mini Cooper S Clubman

(y)    10/7/2015 AS OF TODAY, 10/07/15, THIS VEHICLE IS LEAKING OIL AND THE DEALER WILL NEED TO BE CONTACTED FOR REPAIRS. I HAVE ALL SERVICE RECEIPTS FOR REVIEW.

2011 Mini Cooper

(z)    9/7/2011 IN ADDITION, THE OIL PUMP GASKET AND MAP THERMOSTAT WERE REPLACED PRIOR TO THE TRANSMISSION FAILURE. THE MANUFACTURER WAS NOTIFIED OF THE DEFECT. THE APPROXIMATE FAILURE MILEAGE WAS 2,504. UPDATED 10/12/11*LJ UPDATED 3/30/12 *CN

2014 Mini Cooper

(aa)    1/13/2015 THIS WOULD BE THE SECOND TIME IN WHICH I HAVE HAD TO VISIT NICK ALEXANDER IMPORTS OF DOWNTOWN LOS ANGELES, DUE TO THE MALFUNCTIONING OF MY VEHICLE, SPECIFICALLY THE ENGINE. THE FIRST TIME, MY CAR HAD STALLED ON THE FREEWAY DURING RUSH HOUR TIME. THE SERVICE SPECIALIST AT THE DEALERSHIP ATTRIBUTED MY CAR STALLING AS A SYSTEM UPDATE ISSUE AND FOUND THAT THEIR WAS A RECALL ON A VEHICLE PART (A NUT THAT SECURES THE SPARE TIRE TO THE CAR THAT COULD BECOME LOOSE DURING DRIVING), WHICH HE REPLACED. THIS SECOND TIME, WHICH WAS ON JANUARY 5TH, 2015, MY CAR STARTED TO WARN ME THAT THE "ENGINE OIL PRESSURE WAS TOO LOW" AND TO STOP MY ENGINE IMMEDIATELY. AFTER A FEW MINUTES OF PARKING MY CAR, I NOTICED THAT THERE WAS A PUDDLE OF OIL GATHERING UNDER THE UPPER PORTION OF MY VEHICLE. ONCE I WAS ABLE TO HAVE MY CAR INSPECTED BY THE DEALER'S SERVICE SPECIALIST, I WAS NOTIFIED THAT THERE WAS ANOTHER RECALL ON A PART. THIS TIME IT WAS THE OIL FILTER HOUSING THAT CRACKED BECAUSE IT WAS "TOO WEAK". THE SPLASH SHIELD AND OIL DEFLECTOR ALSO NEEDED TO BE REPLACED. IN BOTH INCIDENTS I WAS PLACED IN

LIFE THREATENING SITUATIONS AND CAN NO LONGER FEEL CONFIDENT THAT MY MINI COOPER IS SAFE TO DRIVE. *TR

(bb) 5/12/2015 DRIVING ON THE FREEWAY, CAR LOST OIL PRESSURE SUDDENLY, OIL POURED OUT OF VEHICLE, SMOKING AS WARNING LIGHTS INDICATED "DRIVE TRAIN MALFUNCTION" AND THEN, "LOSS OF OIL PRESSURE: STOP VEHICLE". DIAGNOSED AS A FAILURE OF A WELDING ON THE OIL PUMP HOUSING. MINI REPLACED PART AND RETURNED CAR TO ME. WITHIN 1 MILE, "DRIVE TRAIN MALFUNCTION" IGNITED AGAIN. A WEEK LATER, THEY REPORTED THAT THERE WERE METAL SHAVINGS IN THE OIL AND THE ENGINE NEEDED TO BE REPLACE. I SOLD IT BACK TO MINI AS A LEMON.

(cc) 7/13/2015 I WAS DRIVING ON AN INTERSTATE AND A WARNING READING "DRIVETRAIN MALFUNCTION. DRIVE MODERATELY" CAME ON. POWER WAS LOW (COULDN'T GET THE CAR OVER ABOUT 60 MPH, NOT SAFE ON AN INTERSTATE WITH STEADY TRAFFIC) AND CAR WAS SOMEWHAT CHUGGY. THIS CAR HAS THREE TIMES IN UNDER 8000 MILES TOLD ME THE OIL WAS LOW AND IT WAS CRITICALLY NECESSARY FOR ME TO ADD A QUART, WHICH SEEMS RELATED. AFTER STOPPING AND CALLING MINI (WHO TOLD ME THEY WOULD SEND A TOW TRUCK IF THE LIGHT HAD BEEN RED, RATHER THAN YELLOW) AND STARTING THE CAR BACK UP SOME 20ISH MINUTES LATER, NO WARNING. UNSURE WHEN THE NEXT WARNING IN THIS NEW CAR WILL COME UP, BUT MINI SAYS THERE IS AN ISSUE WITH OIL FILTER HOUSINGS.

(dd) 10/19/2015 THE ENGINE STARTED TICKING (TO ME THAT IS INDICATING LACK OR NO OIL). "DRIVE TRAIN MALFUNCTION: DRIVE MODERATELY." AND "DROP IN OIL PRESSURE. SLOW TO A STOP " WARNINGS BOTH CAME ON. I PULLED OVER 3 LANES QUICKLY TO THE SIDE OF THE FREEWAY , SHUT THE CAR OFF AND HOPED I WAS IN A SAFE SPOT. WHEN THE TOW TRUCK OPERATOR CAME, HE TOLD ME OIL WAS UNDERNEATH MY CAR. WHY WOULD A CAR JUST SPILL OIL OUT WHILE DRIVING ? IM PRETTY SCARED OF WHAT HAS HAPPENED TO MY ENGINE. CAR IS AT THE DEALER, AND I'M REALLY NOT CONFIDENT IN THIS CAR. I HAVE NOT BEEN CONFIDENT SINCE ALL OF THE PROBLEMS I HAVE HAD SINCE PURCHASE

2014 Mini Cooper S

(ee) 1/26/2015 VEHICLE LOST ALL OIL SUPPOSEDLY DUE TO A FAULTY OIL FILTER HOUSING CAR STOPPED AND WAS SMOKING. *TR

(ff) 3/21/2015 OIL FILTER HOUSING FAILED DURING COMMUTE AND LOST ALL OIL. NEEDED TO HAVE THE CAR TOWED FOR REPAIR. RECEIVED THE CAR BACK NEXT DAY. FAILED PART IS CURRENTLY SUBJECT OF RECALL, BUT MY CAR DID NOT FALL INTO THE SCOPE OF THE RECALL SO I NEVER RECEIVED A NOTICE. TWO DAYS AFTER REPAIR FOR THE OIL FILTER HOUSING, THE VANOS

CLASS ACTION COMPLAINT

SYSTEM FAILED. ENTIRE VANOS SYSTEM NEEDED TO BE REPLACED, TOOK A TOTAL OF 6 DAYS FOR REPAIR.

**BMW Has Exclusive Knowledge of the Engine Oil Sealing Defect**

44.     BMW had superior and exclusive knowledge of the Engine Oil Sealing Defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

45.     Plaintiff are informed and believe and based thereon allege that before Plaintiff purchased their Class Vehicles, and since at least 2011, BMW knew about the Engine Oil Sealing Defect through sources not available to consumers, including: consumer complaints about the Engine Oil Sealing Defect to Defendant's dealers who are their agents for vehicle repairs; aggregate data from BMW's dealers; consumer complaints to NHTSA and resulting notice from NHTSA; early consumer complaints on websites and internet forums; dealership repair orders; technical service bulletins ("TSBs") applicable to the Class Vehicles; and other internal sources of aggregate information about the problem.

46.     As a result of Engine Oil Sealing Defect, BMW issued multiple Technical Service Bulletins ("TSBs") to its dealers in the United States, acknowledging defects in the engine lubrication system and attempting to address the issue.  For example, on or about June 1, 2012, BMW issued TSB 11-03-12, covering 2005-2013 Mini Cooper vehicles, informing its dealers that the "engine oil pan gasket replacement should no longer be used due to [sic] sealing flange becoming deformed."  Additionally, on or about January 1, 2014, BMW issued TSB 11-01-12, covering 2005-2013 Mini Cooper vehicles, informing its dealers that "an oil leakage may occur, due to the compromised oil pump volume control solenoid valve."  However, on information and belief, consumers continued to experience problems with their vehicles, including oil leaks and engine malfunction warnings.

47. On April 14, 2014, BMW issued TSB 11-01-14, covering 2014 Mini Cooper and Mini Cooper S vehicles, informing dealers that "the oil filter housing assembly must be replaced." The TSB further stated that "there is a possibility that coolant leak may occur in [sic] the oil filter housing" and "this can cause overheating, loss of power, and an illuminated engine warning light." However, on information and belief, consumers continued to experience problems with their vehicles, including oil leaks and engine malfunction warnings.

48. On April 1, 2015, BMW issued TSB 11-03-15, covering 2011-2015 Mini Cooper vehicles, informing its dealers that "some vehicles are consuming engine oil and run [sic] poorly." Additionally, the vehicles are leaking oil "from cylinder head cover gasket area" in the engine and also indicating an "engine malfunction." However, on information and belief, consumers continued to experience problems with their vehicles, including oil leaks and engine malfunction warnings.

49. On June 1, 2015, BMW issued TSB 11-05-15, covering 2014 Mini Cooper vehicles, informing its dealer that vehicles "will experience a loss of power, warning light for engine on, overheating, due to a coolant leakage occurring in oil filter housing." Around the same time, BMW issued a second TSB 11-05-15, covering the same vehicles, informing its dealers that the "oil filter housing may leak coolant which will cause overheating, activating the engine warning light, and loss of power."

50. The Engine Oil Sealing Defect was inherent in each MINI vehicle and was present in each MINI vehicle at the time of sale.

51. The existence of the Engine Oil Sealing Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle. Had Plaintiff and other Class Members known that the Class Vehicles were equipped with defective engine lubrication systems, they would not have purchased or leased the Class Vehicles or would have paid less for

1  them.

2      52.     Reasonable consumers, like Plaintiff, reasonably expect that a

3  vehicle's engine lubrication system is safe, will function in a manner that will

4  not pose a safety hazard, and is free from defects.  Plaintiff and Class Members

5  further reasonably expect that BMW will not sell or lease vehicles with known

6  safety defects, such as the Engine Oil Sealing Defect, and will disclose any such

7  defects to its consumers when it learns of them.  They did not expect BMW to

8  fail to disclose the Engine Oil Sealing Defect to them and to continually deny the

9  defect.

10     **BMW Has Actively Concealed the Engine Oil Sealing Defect**

11     53.     While BMW has been fully aware of the Engine Oil Sealing Defect

12  in the Class Vehicles, it actively concealed the existence and nature of the defect

13  from Plaintiff and Class Members at the time of purchase, lease, or repair and

14  thereafter.  Specifically, BMW failed to disclose or actively concealed at and

15  after the time of purchase, lease, or repair:

16             (a)     any and all known material defects or material nonconformity

17                      of the Class Vehicles, including the defects relating to the

18                      engine lubrication system;

19             (b)     that the Class Vehicles, including their engine lubrication

20                      systems, were not in good in working order, were defective,

21                      and were not fit for their intended purposes; and

22             (c)     that the Class Vehicles and their engine lubrication systems

23                      were defective, despite the fact that BMW learned of such

24                      defects through high failure rates, customer complaints, and

25                      other internal sources, as early as 2011.

26     54.     As a result of the Engine Oil Sealing Defect, BMW received several

27  complaints regarding the Class Vehicles' engine lubrication system, including

28  customers experiencing engine oil leakages, sudden loss of power during

1  operation, engine overheating, and engine failure.

2      55.    Despite the TSBs discussed above, on information and belief,

3  consumers continued to experience problems with their vehicles despite these

4  fixes, including engine oil leakages, sudden loss of power during operation,

5  engine overheating, and engine failure, which necessitated additional repairs or

6  replacements of engine lubrication system parts.

7      56.    On information and belief, the repairs outlined by the various TSBs

8  issued by BMW were ineffective at addressing the Engine Oil Sealing Defect.

9      57.    When consumers presented the Class Vehicles to an authorized

10  MINI dealer for repairs to components within the engine lubrication system,

11  rather than repair the problems under warranty, BMW dealers performed repairs

12  that simply masked the defects.

13      58.    To this day, BMW still has not notified Plaintiff and Class Members

14  that the Class Vehicles suffer from a systemic defect that causes the engine

15  lubrication system to malfunction.

16      59.    On information and belief, BMW has caused Plaintiff and Class

17  Members to expend money at its dealerships to diagnose, repair, or replace the

18  Class Vehicles' oil filter housing unit, oil filter gaskets, oil filter cover, oil

19  pumps, oil feed lines, oil pan, valves, seals, and other engine lubrication system-

20  related components, despite BMW's knowledge of the Engine Oil Sealing

21  Defect.

22                    **CLASS ACTION ALLEGATIONS**

23      60.    Plaintiff brings this lawsuit as a class action on behalf of himself

24  and all others similarly situated as members of the proposed Class pursuant to

25  Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  This action

26  satisfies the numerosity, commonality, typicality, adequacy, predominance, and

27  superiority requirements of those provisions.

28      61.    The Class and Sub-Class are defined as:

**Nationwide Class**:  All individuals in the United States who purchased or leased any 2009 through 2014 MINI vehicles (the "Nationwide Class" or "Class").

**California Sub-Class**:  All members of the Nationwide Class who reside in the State of California.

**CLRA Sub-Class**:  All members of the California Sub-Class who are "consumers" within the meaning of California Civil Code § 1761(d).

**Implied Warranty Sub-Class**:  All members of the Nationwide Class who purchased or leased their vehicles in the State of California.

62.     Excluded from the Class and Sub-Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

63.     There is a well-defined community of interest in the litigation and each subclass is readily ascertainable.

64.     Numerosity:  Although the exact number of prospective class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of prospective class members' claims in a single action will provide substantial benefits to all parties and to the Court.  The prospective class members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

65.     Therefore, the Class is sufficiently numerous that joinder of all

members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

66.   Ascertainability:  Names and addresses of members of the Class are available from BMW's records.  Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

67.   Typicality:  Plaintiff's claims are typical of the claims of other members of the Class which he seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiff and each member of the Class have been subjected to the same deceptive and improper practices and have been damaged in the same manner thereby.

68.   Adequacy:  Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Class, because he has no interests which are adverse to the interests of the members of the Class.  Plaintiff is committed to the vigorous prosecution of this action, and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

69.   Superiority:  A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)   The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their "negative value" claims other than through the procedure of a class action.

(b)   If separate actions were brought by individual members of the

Class, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

(c)     Absent a class action, BMW likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

70.     Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

71.     The common questions of fact include, but are not limited to, the following:

(a)     Whether Class Vehicles contain defects relating to the Engine Lubrication System;

(b)     Whether the defects relating to the Engine Lubrication System constitute an unreasonable safety risk;

(c)     Whether Defendant knew about the defects relating to the Engine Lubrication System and, if so, how long Defendant has known of the defect;

(d)     Whether the defective nature of the Engine Lubrication System constitutes a material fact;

(e)     Whether Defendant has a duty to disclose the defective nature of the Engine Lubrication System to Plaintiff and prospective class members;

(f)     Whether Plaintiff and the prospective class members are entitled to equitable relief, including but not limited to a preliminary injunction, permanent injunction, or both;

(g)     Whether Defendant knew or reasonably should have known of the defects relating to the Engine Lubrication System before it

sold and leased Class Vehicles to prospective class members;

(h)   Whether Defendant should be declared financially responsible for notifying all prospective class members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective components of the Engine Lubrication System;

(i)   Whether Defendant is obligated to inform prospective class members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective components of the Engine Lubrication System; and

(j)   Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act.

(k)   Whether Defendant breached the implied warranty of merchantability pursuant to the Magnuson-Moss Act.

72.   In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

(a)   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for BMW;

(b)   The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)   BMW has acted or refused to act on grounds generally

CLASS ACTION COMPLAINT

applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

73.    Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

## (Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)

74.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

75.    Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the CLRA Sub-Class.

76.    Defendant is a "person(s)" as defined by California Civil Code § 1761(c).

77.    Plaintiff and CLRA Sub-Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

78.    By failing to disclose and concealing the defective nature of the engine lubrication systems from Plaintiff and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their engine lubrication systems had characteristics and benefits that they do not have, and represented that the Class Vehicles and their engine lubrication systems were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

79.    Defendant's unfair and deceptive acts or practices occurred

1    repeatedly in Defendant's trade or business, were capable of deceiving a

2    substantial portion of the purchasing public, and imposed a serious safety risk on

3    the public.

4         80.    Defendant knew that the Class Vehicles and their engine lubrication

5    systems suffered from an inherent defect, were defectively designed or

6    manufactured, and were not suitable for their intended use.

7         81.    As a result of their reliance on Defendant's omissions, owners

8    and/or lessees of the Class Vehicles suffered an ascertainable loss of money,

9    property, and/or value of their Class Vehicles. Additionally, as a result of the

10   Engine Oil Sealing Defect, Plaintiff and Class Members were harmed and

11   suffered actual damages in that the Class Vehicles' engine lubrication system

12   components are substantially certain to fail or require replacement or repair,

13   before their expected useful life has run.

14        82.    Defendant was under a duty to Plaintiff and Class Members to

15   disclose the defective nature of the engine lubrication systems and/or the

16   associated repair costs because:

17             (a)    Defendant was in a superior position to know the true state of

18                    facts about the safety defect in the Class Vehicles' engine

19                    lubrication systems;

20             (b)    Plaintiff and Class Members could not reasonably have been

21                    expected to learn or discover that their engine lubrication

22                    systems had a dangerous safety defect until it manifested; and

23             (c)    Defendant knew that Plaintiff and Class Members could not

24                    reasonably have been expected to learn of or discover the

25                    safety defect.

26        83.    In failing to disclose the defective nature of the engine lubrication

27   systems, Defendant knowingly and intentionally concealed material facts and

28   breached their duty not to do so.

84.     The facts Defendant concealed from or failed to disclose to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiff and Class Members known that the Class Vehicles' engine lubrication systems were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

85.     Plaintiff and Class Members are reasonable consumers who do not expect the engine lubrication systems installed in their vehicles to exhibit problems such as cracking, deforming, or deteriorating, necessitating frequent repair and replacement of components within the engine lubrication system. This is the reasonable and objective consumer expectation relating to vehicle engine lubrication systems.

86.     As a result of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and may continue to experience problems such as engine oil leakages, sudden loss of power during operation, engine overheating, and potential engine failure.  There problems necessitate frequent repair of components within the engine lubrication system including the the oil filter housing unit, oil filter gaskets, oil filter cover, oil pumps, oil feed lines, oil pan, valves, seals, and other related components.

87.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

88.     Plaintiff and the Class are entitled to equitable relief.

89.     Plaintiff Borkman provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  Defendant failed to provide appropriate relief for its violations of the CLRA within 30 days. Therefore, Plaintiff Borkman seeks monetary, compensatory, and punitive

damages, in addition to injunctive and equitable relief.

## SECOND CAUSE OF ACTION

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

90.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

91.     Plaintiff brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

92.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Engine Oil Sealing Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' engine lubrication system components are substantially certain to fail or require replacement or repair, before their expected useful life has run.

93.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

94.     Plaintiff and Class Members are reasonable consumers who do not expect the engine lubrication systems installed in their vehicles to exhibit problems such as cracking, deforming, or deteriorating, necessitating frequent repair and replacement of components within the engine lubrication system. This is the reasonable and objective consumer expectation relating to vehicle engine lubrication systems.

95.     Defendant knew the Class Vehicles and their engine lubrication systems suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

96.     In failing to disclose the defects with the engine lubrication system,

1    Defendant has knowingly and intentionally concealed material facts and
2    breached its duty not to do so.

3          97.    Defendant was under a duty to Plaintiff and Class Members to
4    disclose the defective nature of the Class Vehicles and their engine lubrication
5    systems:

6                 (a)    Defendant was in a superior position to know the true state of
7                        facts about the safety defect in the Class Vehicles' engine
8                        lubrication systems;

9                 (b)    Defendant made partial disclosures about the quality of the
10                       Class Vehicles without revealing the defective nature of the
11                       Class Vehicles and their engine lubrication systems; and

12                (c)    Defendant actively concealed the defective nature of the Class
13                       Vehicles and their engine lubrication systems from Plaintiff
14                       and the Class.

15         98.    The facts Defendant concealed from or did not disclose to Plaintiff
16   and Class Members are material in that a reasonable person would have
17   considered them to be important in deciding whether to purchase or lease Class
18   Vehicles.  Had Plaintiff and other Class Members known that the Class Vehicles'
19   engine lubrication systems were defective and posed a safety hazard, then
20   Plaintiff and the other Class Members would not have purchased or leased Class
21   Vehicles equipped with such engine lubrication systems, or would have paid less
22   for them.

23         99.    Defendant continued to conceal the defective nature of the Class
24   Vehicles and their engine lubrication systems even after Class Members began to
25   report problems.  Indeed, Defendant continues to cover up and conceal the true
26   nature of the problem, while addressing consumer complaints by replacing the
27   engine lubrication system's components with the same or substantially similar
28   defective components in order to ensure that the defect will manifest itself

CLASS ACTION COMPLAINT

1    outside of the warranty period.

2         100.   Defendant's conduct was and is likely to deceive consumers.

3         101.   Defendant's acts, conduct, and practices were unlawful, in that they

4    constituted, as alleged in this complaint:

5              (a)    Violations of the California Consumers Legal Remedies Act;

6              (b)    Violations of the Song-Beverly Consumer Warranty Act; and

7              (c)    Violations of the Magnuson-Moss Warranty Act.

8         102.   By their conduct, Defendant has engaged in unfair competition and

9    unlawful, unfair, and fraudulent business practices.

10        103.   Defendant's unfair or deceptive acts or practices occurred

11   repeatedly in Defendant's trade or business, and were capable of deceiving a

12   substantial portion of the purchasing public.

13        104.   As a direct and proximate result of Defendant's unfair and deceptive

14   practices, Plaintiff and the Class have suffered and will continue to suffer actual

15   damages.

16        105.   Defendant has been unjustly enriched and should be required to

17   make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the

18   Business & Professions Code.

19                         **THIRD CAUSE OF ACTION**

20        **(Breach of Implied Warranty Pursuant to Song-Beverly**

21   **Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq*.)**

22        106.   Plaintiff incorporates by reference the allegations contained in the

23   preceding paragraphs of this Complaint.

24        107.   Plaintiff brings this cause of action against Defendant on behalf of

25   himself and on behalf of the members of the Implied Warranty Sub-Class.

26        108.   Defendant was at all relevant times the manufacturer, distributor,

27   warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

28   know of the specific use for which the Class Vehicles were purchased or leased.

109.   Defendant provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their engine lubrication systems suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

110.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things:  (i) a warranty that the Class Vehicles and their engine lubrication systems manufactured, supplied, distributed, and/or sold by BMW were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their engine lubrication systems would be fit for their intended use while the Class Vehicles were being operated.

111.   Contrary to the applicable implied warranties, the Class Vehicles and their engine lubrication systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles exhibit the Engine Oil Sealing Defect.

112.   As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Engine Oil Sealing Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' engine lubrication system components are substantially certain to fail or require replacement or repair, before their expected useful life has run.

113.   Defendant's actions, as complained of herein, breached the implied

1   warranty that the Class Vehicles were of merchantable quality and fit for such

2   use in violation of California Civil Code §§ 1792 and 1791.1.

### FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty under the Magnuson-Moss Warranty Act,

### 15 U.S.C. § 2301 *et seq.*)

6   114.   Plaintiff incorporates by reference the allegations contained in the

7   preceding paragraphs of this Complaint.

8   115.   Plaintiff brings this cause of action against Defendant, on behalf of

9   himself and on behalf of the Nationwide Class, or, in the alternative, on behalf of

10  the California Sub-Class, against Defendant.

11  116.   The Class Vehicles are a "consumer product" within the meaning of

12  the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

13  117.   Plaintiff and Class Members are "consumers" within the meaning of

14  the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

15  118.   Defendant is a "supplier" and "warrantor" within the meaning of the

16  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).  Defendant impliedly

17  warranted that the Class Vehicles were of merchantable quality and fit for such

18  use.  This implied warranty included, among other things:  (i) a warranty that the

19  Class Vehicles and their engine lubrication systems were manufactured,

20  supplied, distributed, and/or sold by BMW were safe and reliable for providing

21  transportation; and (ii) a warranty that the Class Vehicles and their engine

22  lubrication systems would be fit for their intended use while the Class Vehicles

23  were being operated.

24  119.   Contrary to the applicable implied warranties, the Class Vehicles

25  and their engine lubrication systems at the time of sale and thereafter were not fit

26  for their ordinary and intended purpose of providing Plaintiff and Class Members

27  with reliable, durable, and safe transportation.  Instead, the Class Vehicles

28  exhibit the Engine Oil Sealing Defect.

120.   Defendant's breach of implied warranty has deprived Plaintiff and Class Members of the benefit of their bargain.

121.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

122.   The alleged Engine Oil Sealing Defect was inherent in each MINI vehicle and was present in each MINI vehicle at the time of sale.

123.   Defendant has been afforded a reasonable opportunity to cure its breaches, including when Plaintiff and Class Members brought their vehicles in for diagnoses and repair of components within the engine lubrication systems.

124.   As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

125.   As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiff and Class Members have incurred damages.

## FIFTH CAUSE OF ACTION
### (For Unjust Enrichment)

126.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

127.   Plaintiff brings this cause of action on behalf of himself and on behalf of the Class Members against Defendant.

128.   As a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects,

Defendant has profited through the sale and lease of said vehicles.  Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

129.   Additionally, as a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Plaintiff and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

130.   Defendant has therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiff and Class Members.

131.   As a result of the Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

## RELIEF REQUESTED

132.   Plaintiff, on behalf of himself, and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

(a)   An order certifying the proposed Class and Sub-Classes, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b)   A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the engine lubrication system, including the need for periodic maintenance;

(c)   An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, and to remove and replace Plaintiff and Class Members' engine lubrication systems with a suitable

1       alternative product; enjoining Defendant from selling the

2       Class Vehicles with the misleading information; compelling

3       Defendant to provide Class Members with replacement engine

4       lubrication system components that do not contain the defects

5       alleged herein; and/or compelling Defendant to reform its

6       warranty, in a manner deemed to be appropriate by the Court,

7       to cover the injury alleged and to notify all Class Members

8       that such warranty has been reformed;

9     (d)  A declaration requiring Defendant to comply with the various

10       provisions of the Song-Beverly Act alleged herein and to

11       make all the required disclosures;

12     (e)  An award to Plaintiff and the Class for compensatory,

13       exemplary, and statutory damages, including interest, in an

14       amount to be proven at trial;

15     (f)  Any and all remedies provided pursuant to the Song-Beverly

16       Act, including California Civil Code section 1794;

17     (g)  Any and all remedies provided pursuant to the Magnuson-

18       Moss Warranty Act;

19     (h)  A declaration that Defendant must disgorge, for the benefit of

20       the Class, all or part of the ill-gotten profits it received from

21       the sale or lease of its Class Vehicles, or make full restitution

22       to Plaintiff and Class Members;

23     (i)  An award of attorneys' fees and costs, as allowed by law;

24     (j)  An award of attorneys' fees and costs pursuant to California

25       Code of Civil Procedure § 1021.5;

26     (k)  An award of pre-judgment and post-judgment interest, as

27       provided by law;

28     (l)  Leave to amend the Complaint to conform to the evidence

1    produced at trial; and

2        (m)    Such other relief as may be appropriate under the

3    circumstances.

4              **DEMAND FOR JURY TRIAL**

5    133.    Plaintiff demands a trial by jury of any and all issues in this action

6    so triable.

7

8    Dated:  March 31, 2016                    Respectfully submitted,

9                                              Capstone Law APC

10

11                                    By: /s/ Jordan L. Lurie

12                                        Jordan L. Lurie
                                          Robert K. Friedl
                                          Tarek H. Zohdy

13                                        Cody R. Padgett
                                          Karen L. Wallace

14                                        Attorneys for Plaintiff Joshua Borkman

15

16

17

18

19

20

21

22

23

24

25

26

27

28